# Exhibit B

CIRCUIT COURT FOR BALTIMORE CITY
Xavier A. Conaway
Clerk of the Circuit Court
Courthouse East
111 North Calvert Street
Room 462
Baltimore, MD 21202-
(410)-333-3722, TTY for Deaf: (410)-333-4389

W R I T   O F   S U M M O N S   ( P r i v a t e   P r o c e s s )

Case Number: 24-C-23-002263 OT
C I V I L

ELIZABETH L GOLDBERG, et al vs TELEVISION TOWER INC, et al

STATE OF MARYLAND, BALTIMORE CITY, TO WIT:

        To: SKYLINE TOWER PAINTING, INC
Serve On: REGISTERED AGENTS, INC R/A
          5000 THAYER CENTER, SUITE C
          Oakland, MD 21550


    You are hereby summoned to file a written response by pleading or motion,
within 30   days after service of this summons upon you, in this court, to
the attached Complaint filed by:   ELIZABETH L GOLDBERG
                                   2035 DRUID PARK DRIVE
                                   Baltimore, MD 21211

WITNESS the Honorable Chief Judge of the Eighth Judicial Circuit of
Maryland

Date Issued:   05/12/23

Xavier A. Conaway
Clerk of the Circuit Court, per


To the person summoned:

FAILURE TO FILE A RESPONSE WITHIN THE TIME ALLOTTED MAY RESULT IN A JUDGMENT
BY DEFAULT OR THE GRANTING OF THE RELIEF SOUGHT AGAINST YOU.

Personal attendance in court on the day named is NOT required.

## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

**ELIZABETH L. GOLDBERG**                          *
2035 Druid Park Drive
Baltimore, Maryland 21211                          *

and                                                *

**MYRIAM RALSTON**                                 *
**JOHN RALSTON**                              Case No: _____
2002 Girard Avenue                                 *
Baltimore, Maryland 21211          **JURY TRIAL REQUESTED**
                                                   *
and                                                *

**HANNAH ROHER**
**BENJAMIN ROBERTS**                               *
2014 Rockrose Avenue
Baltimore, MD 21211                                *

and                                                *

**JOSHUA C. TOHN**                                 *
**MARIA HAGEN**
2005 Girard Avenue                                 *
Baltimore, Maryland 21211
                                                   *
and                                                *

**CHRISTINE SAJECKI**                              *
3600 Hopper Avenue
Baltimore, Maryland 21211                          *

       Plaintiffs,                    *

v.                                                 *

**TELEVISION TOWER, INC.**                         *
3723 Malden Avenue
Television Hill                                    *
Baltimore, Maryland 21211                          *

  SERVE ON:                                    *
  Mark T. Jenson, Resident Agent

210 W. Pennsylvania Avenue  
Suite 400    *  
Towson, Maryland 21204  
                           *  
and                        *  

**SKYLINE TOWER PAINTING, INC.**    *  
250275 Highland Road  
Scottsbluff, Nebraska 69361    *  

                           *  
SERVE ON:  
Registered Agents, Inc, Resident Agent    *  
5000 Thayer Center, Suite C  
Oakland, Maryland 21550    *  

        Defendants.    *  

*    *    *    *    *    *    *    *    *    *    *    *    *    *  

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Now come Plaintiffs, Elizabeth Goldberg, Myriam Ralston, John Ralston, Hannah Roher, Benjamin Roberts, Joshua C. Tohn, Maria Hagen and Christine Sajecki ("Plaintiffs"), by and through their attorneys, William H. Murphy, Jr., Ronald E. Richardson, Andrew K. O'Connell and Murphy, Falcon & Murphy, and sue Defendants Television Tower, Inc. and Skyline Tower Painting, Inc. (collectively "Defendants").

Plaintiffs bring this action individually and on behalf of all similarly situated persons ("Class Members") who have sustained property value depreciation as a result of lead contamination caused by the wrongful and negligent conduct of Defendants.

### PARTIES

1.      Plaintiff Elizabeth Goldberg resides at 2035 Druid Park Drive, Baltimore, Maryland 21211.

2.      Plaintiffs Hanna Roher and Benjamin Roberts reside at 2014 Rockrose Ave., Baltimore, Maryland, 21211.

2

3.      Plaintiffs Myriam Ralston and John Ralston reside at 2002 Girard Avenue, Baltimore, Maryland 21211.

4.      Plaintiffs Joshua Tohn and Maria Tohn reside at 2005 Girard Ave., Baltimore, Maryland 21211.

5.      Plaintiffs Christine Sajecki resides at 3600 Hopper Avenue, Baltimore, Maryland 21211.

6.      Defendant Television Tower, Inc. ("TTI") is a corporation organized under the laws of Maryland, doing business in Baltimore, Maryland. At all times relevant to this civil action, TTI owned the "candelabra" television tower located at 3723 Malden Avenue, Television Hill, Baltimore, Maryland 21211 (hereinafter "TV Tower").

7.      Baltimore based television stations WJZ-TV, WBAL-TV, and WMAR-TV use the TV Tower to broadcast their respective television content.  TTI is a joint venture owned by WJZ-TV, WBAL-TV, and WMAR-TV.

8.      Defendant Skyline Tower Painting, Inc. ("Skyline") is a corporation organized under the laws of Colorado with its principal place of business located at 250275 Highland Road, Scottsbluff, NE 69361. Skyline is registered to do business in the State of Maryland.

9.      Skyline specializes in the evaluation, cleaning and painting of tall tower structures such as the TV Tower that is the subject of this civil action.

### JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter pursuant to, *inter alia*, the provisions of MD. Code Ann., Cts. & Jud. Proc. § 1-501. This Court has personal jurisdiction over the Defendants pursuant to, *inter alia*, the provisions of MD. Code Ann. Cts. & Jud. Proc. §§ 6-102 and 6-103.

3

11.     Venue in Baltimore City, Maryland is proper pursuant to, *inter alia*, the provisions of Md. Code Ann., Cts & Jud. Proc. §§ 6-201 and 6-202.

12.     This Court has personal jurisdiction over this action against Defendants TTI and Skyline because those Defendants are organized under the laws of Maryland and/or regularly transact business and perform services in Maryland and venue is appropriate because the tortious acts that are the subject of this civil action occurred within Baltimore City, Maryland.

## FACTS COMMON TO ALL COUNTS

13.     This is a civil action for the diminution in real property value caused by Defendants TTI and Skyline's tortious conduct that took place in Baltimore City as well as for injunctive relief.

14.     Constructed in 1959 at a cost of $1.25 million, TV Tower is a 1,319 feet high television broadcasting tower located on Baltimore City's "TV Hill." TV Tower contains 500 tons of nickel-chrome alloy steel. Its main legs are composed of solid steel seven inches in diameter, set in a triangle twelve feet on a side. The legs rest on a concrete polygon fifteen feet on a side and twenty feet deep.

15.     TV Tower is topped with a triangle antenna platform 105 feet long on each face and 16 feet thick. A 10-ton, 101-foot antenna mast is supported at each corner of the platform. The TV Tower is guyed by 3 miles of steel wire rope. Twelve sets of guy wires installed at four levels are anchored to the ground by 33-foot square slabs buried 16 feet deep. A total of 2,250 tons of concrete form the tower base and cable anchors. A 270-foot extension was built in 1964 to improve signal transmissions.

16.     A total of 2.5 tons of lead-based paint was applied to the TV Tower during its construction. The outer surface of the TV Tower's paint coating appears bright red.

4

17.   Lead is a highly toxic metal that causes a range of health problems, especially in young children. When lead is absorbed into the body, it can cause damage to the brain and other vital organs, like the kidneys, nerves, and blood.

18.   Lead may also cause behavioral problems, learning disabilities, seizures, and in extreme cases, death.

19.   According to the U.S. Department of Housing and Urban Development ("HUD"), deteriorated lead-paint outside the home mixes with household dust and soil and becomes tracked inside, presenting a hazard to occupants.

20.   HUD further warns children may become lead poisoned by playing in lead-contaminated soil, eating paint chips containing lead and/or putting their hands or other lead contaminated objects in their mouths. Even small amounts of lead can cause permanent brain damage in children.

21.   Despite known hazards associated with lead-based paint, TV Tower's lead paint has never been fully removed or contained.

22.   At all times relevant hereto, TTI knew the TV Tower contained lead-based paint and that this paint would deteriorate over time.

23.   At all times relevant hereto, TV Tower exhibited outward signs that its deteriorating lead paint was chipping and peeling, had chalky residue on its surface and was cracking.

24.   TTI contracted with Skyline for the evaluation and cleaning of the TV Tower using high pressure water ("Hydro-blasting"), among other contract terms.

25.   TTI and Skyline knew that Hydro-blasting the deteriorating lead paint from the steel tower hundreds of feet in the air above residential communities, businesses, public parks, roadways, sidewalks, sports fields, educational facilities, water ways and streams was inherently

reckless and dangerous, presenting a high risk of harm to the public and that this risk was foreseeable.

26.  It was foreseeable to Defendants that Hydro-blasting the TV Tower risked blasting lead-based paint chips and dust into the air where it could spread to other properties, including, but not limited to, those owned by Plaintiffs and Class Members.

27.  It was further foreseeable to Defendants that the introduction of lead-based paint chips and dust onto other properties presented a high risk of severe and permanent injuries to human beings, especially children.

28.  It was further foreseeable to Defendants that contaminating other properties with lead-based paint chips and dust would cause damage to those properties, diminishing their values and harming businesses operating on and/or near them.

29.  TTI and Skyline had a non-delegable duty to ensure that work done to the TV Tower complied with all federal, state and local regulations, including the Code of Maryland Regulations ("COMAR") as well as industry best practices because it knew that these regulations were aimed at protecting the public from ingesting lead dust and paint chips long-known to be toxic.

30.  Pursuant to a contract with TTI, on or about May 28, 2022, Skyline began evaluating and Hydro-blasting TV.

31.  At the time TTI entered into the contract with Skyline to perform the evaluation and cleaning of the TV Tower, Skyline did not possess the appropriate accreditation, licensing and/or training to perform the work.

6

32. Prior to selecting Skyline, TTI failed to verify Skyline had the appropriate accreditation, licensing and/or training to perform the work on the TV Tower called for in the contract between the Defendants as required by COMAR.

33. TTI failed to make an appropriate inquiry with third parties that Skyline was properly accredited, licensed and/or trained to perform the work the company did on the TV Tower.

34. Further Defendants failed to apply for and/or collect the appropriate permit for the work Skyline performed on TV Tower.

35. Skyline's Hydro-blasting of TV Tower dislodged lead-based paint chips and paint dust from TV Tower's surface hundreds of feet above the ground, allowing the toxic lead-based paint chips and dust to be carried by gravity, thermal dynamics and wind away from the TV Tower onto other real property, including real property belonging to Plaintiffs and Class Members and other members of the community.

36. Skyline's Hydro-blasting negligently and recklessly spread lead-based paint chips and lead-based dust for at least 4000 feet in every direction, coating Plaintiffs' and Class Members' property located within a 4000-foot radius of the TV Tower with toxic material hazardous to human health.

37. Individuals, including Plaintiffs and Class Members, found red colored paint chips throughout the community surrounding the TV Tower, including on their respective properties.

38. Plaintiff Goldberg purchased her property located at 2035 Druid Park Drive, Baltimore, Maryland 21211 on 08/20/2019. Ms. Goldberg's property tested positive for the presence of lead paint chips and dust on February 21, 2023.

7

39.     Plaintiffs Myriam and John Ralston purchased their property located at 2002 Girard Ave., Baltimore, Maryland 21211 on 08/18/2020. Mr. and Mrs. Ralston's property tested positive for the presence of lead paint chips and dust on November 8, 2022.

40.     Plaintiffs Hanna Roher and Benjamin Roberts purchased their property located at 2014 Rockrose Avenue, Baltimore, Maryland 21211 on 05/20/2021. Mr. and Mrs. Roher's property tested positive for the presence of lead paint chips and dust on February 2, 2023.

41.     Plaintiffs Joshua Tohn and Maria Hagen purchased their property located at 2005 Girard Avenue, Baltimore, Maryland 21211 on 07/01/2021. Mr. Tohn and Ms. Hagen's property tested positive for the presence of lead paint chips and dust on November 8, 2022.

42.     Plaintiff Christine Sajecki purchased her property located at 3600 Hopper Avenue, Baltimore, Maryland 21211 on 06/24/2022. Ms. Sajecki's property tested positive for the presence of lead paint chips and dust on November 8, 2022.

43.     Skyline's Hydro-blasting continued from May 28, 2022, through August 17, 2022.

44.     Defendants failed to use appropriate precautions to ensure lead-based paint chips and dust did not escape and travel to other properties, causing harm to Plaintiffs and Class Members.

45.     Pursuant to its hydro-blasting of lead paint into the air and onto Plaintiffs' and Class Members' properties, TTI and Skyline disposed of solid waste in an open dump and/or caused, suffered, allowed or permitted open dumping on TTI's property as well as Plaintiffs' and Class Members' property.

46.     Skyline provided lead paint abatement services without accreditation from Maryland's Department of Environment ("MDE").

47.     Skyline did not notify MDE prior to engaging in lead abatement of the TV Tower.

8

48.     TTI and Skyline conducted uncontained and uncontrolled work on TV Tower, including the hydro-blasting of lead-contaminated paint from it and caused an uncontrolled release of lead-based paint dust and particulate matter onto Plaintiffs' and Class Members' properties.

49.     Due to uncontained and uncontrolled work, including hydro-blasting of lead-based paint from the TV Tower, TTI and Skyline failed to contain all wastes within the work site or a secure storage area.

50.     Skyline and TTI disposed of solid waste in the form of paint chips discarded into an open dump.

51.     By causing the removal and discarding of solid waste in the form of lead-based paint chips from the TV Tower without containment, Defendants engaged in solid waste handling in a manner that created a nuisance, impaired the quality of the environment, and created hazards to public health, safety, and comfort.

52.     From May 28, 2022, through August 17, 2022, Defendants failed to make a hazardous waste determination for solid waste in the form of discarded lead paint chips.

53.     Baltimore City Department of Housing and Community Development issued a stop work order for Skyline's Pressure Washing. Skyline was performing the hydro-blasting of the TV Tower without the proper permit from Baltimore City.

54.     Further, MDE received multiple complaints from Baltimore City residents and business owners, including some Plaintiffs and Class Members, that the hydro-blasting caused lead paint chips and lead dust to fall on their property. Video footage of the hydro-blasting can be seen here:

https://youtube.com/shorts/3md6JiUgLHE?feature=share

https://youtube.com/shorts/YOndfRSZJso?feature=share

55.    In a letter dated June 27, 2022, A&I Environmental Services ("A&I") informed Defendant TTI that the hydro-blasting of the TV Tower was performed with little or no protection. In addition, A&I informed Defendant TTI that sports fields and parking lots located nearby at Loyola University were found to have lead paint chips and lead dust caused by the hydro-blasting.

56.    In a letter dated August 1, 2022, MDE informed residents of Baltimore's Woodberry community, located directly below TV Tower, that they received several work practice complaints regarding the removal of paint from the TV Tower, which spread lead paint chips and lead dust into the Woodberry community.

57.    MDE representatives inspected the site on June 22, 2022 and confirmed the presence of deteriorating lead-based paint on TV Tower and in the paint chips dislodged from Defendants' hydro-blasting. MDE stated that so far, thirty-five (35) residents have reported lead paint chips on their properties.

58.    Plaintiffs and Class Members are in that class of persons intended to be protected by the environmental statutes, ordinances, and regulations governing Baltimore City and the permitting regime imposed by it. They are in the class of those whose interests reasonably may be expected to be harmed by Defendants' negligent, reckless, intentional and deliberate acts and/or omissions.

59.    During a meeting of the Woodberry Community Association ("WCA") on July 12, 2022 attended by Rick Seaby (Director of Engineering at CBS/WJZ); Dan Joerres (President and General Manager of WBAL-TV); Kathy Hostetter (Vice President and Manager of WJZ-TV); and Hooper (General Manager of WMAR-TV and President of TTI), Hooper informed members of WCA that TTI had been aware of the presence of lead paint on TV Tower since the 1980's. William Hooper further stated the TV Tower currently has lead paint on it.

60.    During the August, 2022 WCA meeting, Defendant TTI informed WCA members that (a) Skyline would obtain the appropriate accreditation and training and would complete the lead paint abatement of the TV Tower; (b) over 600 community residents may have been affected by the fallout from the hydro-blasting of the TV Tower; (c) as of August 4, 2022, 54 individual properties have requested cleanup; and (d) the Loyola University Athletic Complex was contaminated with lead paint chips and lead dust.

61.    During the September 2022 WCA meeting, residents of the community expressed concern that inspectors were not going on roofs to test for lead contamination; that cleanup crews are only using sticks to find chips and not vacuums; and that the methodology used in this "cleanup" was ineffective.

62.    MDE requires contractors who abate lead paint in Maryland be accredited and trained to work on lead-based paint surfaces. TV Tower knew that neither Skyline nor its supervisors were accredited and trained to perform lead paint abatement on TV Tower at the time of the hydro-blasting.

63.    Skyline failed to follow established protocols an accredited contractor would follow or industry best practices when abating lead paint from the TV Tower. Consequently, because the hydro-blasting was performed, lead paint chips and dust showered the Woodberry community as well as other nearby communities, covering homes, yards, parks, playgrounds, and businesses within at least a 4000 foot radius of the tower.

64.    In addition to the Woodberry community, red lead paint chips from TV Tower were found at the Giant Food Supermarket on 41st Street, in the Medfield community and in the Hampden area at Buena Vista Avenue.

65.    Red paint chips from TV Tower were found throughout the Woodberry community and surrounding communities.



66.    Defendant Skyline acted as the agent for TTI when it was hydro-blasting the TV Tower. Further, Defendant TTI controlled the manner in which Skyline conducted its hydro-blasting work, including acts and omissions that lead to the contamination of Plaintiffs' and Class Members' property.

67.    This claim arises from property devaluation caused by the negligent, reckless, deliberate, and intentional conduct committed within Baltimore City, Maryland by Defendants.

12

## CLASS ACTION ALLEGATIONS

68.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class Members pursuant to Maryland Rule 2-231. This action satisfies the numerosity, commonality, typicality, and adequacy requirements of those provisions.

69.     Plaintiffs seek to represent Class Members, defined as all real property owners whose property is located within a 4000-foot radius of the TV Tower on or after May 28, 2022.

70.     Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number consists of at minimum 300 property owners, making joiner impracticable. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable because all the property owners in this class are owners of record.

71.     Typicality:  The Plaintiffs' claims are typical of the claims of the Class. Like all Class Members, the Plaintiffs own real property within 4000 feet of the TV Tower. The Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that their respective property values have sustained significant depreciation because of lead paint and lead dust contamination caused by the hydro-blasting of the TV Tower by Defendants. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of negligence, gross negligence, reckless, deliberate and intentional acts and omissions committed against the Class Members resulting in damage to all Class Members.

72.   Commonality:   There are questions of law and fact common to the Plaintiffs and the Class that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

a.   Whether Defendants knew of the presence of lead paint on the TV Tower prior to commencing the hydro-blasting in 2022;

b.   Whether Defendants owed a duty of care to Class Members to prevent lead paint from escaping from the TV Tower during their hydro-blasting activities;

c.   Whether Defendants' hydro-blasting of the TV Tower released lead paint and/or lead dust onto Class Members' properties;

d.   Whether Defendant Skyline was acting as the agent for TTI when it was hydro-blasting the TV Tower;

e.   Whether Class Members have a duty to inform prospective buyers of Class Member property of the previous lead paint and/or lead dust contamination;

f.   Whether Class Members sustained property value depreciation as a result of lead contamination from the TV Tower;

g.   Whether Defendants have a duty to inform Class Members of the lead paint and/or lead dust released into air over Class Members' properties;

h.   Whether Defendants are obligated to remediate lead contamination of Class Members' properties;

i.   Whether Defendants knowingly caused lead paint to be released onto Class Member Properties;

j.   Whether Class Members own property within 4000 feet of the TV Tower on or after May 28, 2022;

14

k.  Whether Defendant TTI violated COMAR 26.16.01.04B by hiring, contracting, or retaining a person who was not properly accredited by the Department of Environment to perform lead abatement services;

l.  Whether Defendants TTI and Skyline violated COMAR 26.04.07.03B(4) by disposing of solid waste in an open dump and/or causing, suffering, allowing or permitting open dumping on TTI and Class Members' property;

m.  Whether Defendant Skyline violated COMAR 26.16.01.04A(l) by failing to be accredited by MDE when it provided lead paint abatement services on the TV Tower;

n.  Whether Skyline violated COMAR 26.16.01.13C(1) by failing to notify MDE the start and stop dates as well as the location of its lead paint abatement services at least 24 hour prior to starting its work on the TV Tower;

o.  Whether Defendants TTI and Skyline violated COMAR 26.16.01.13C(2)(a) by performing lead abatement services on structural steel without preventing airborne dispersal of lead-contaminated particulate matter in accordance with COMAR 26.11.06.03;

p.  Whether Defendants TTI and Skyline violated COMAR 26.16.01.13C(2)(b) by failing to contain all wastes within the TV Tower work site or a secure storage area and dispose of wastes in accordance with COMAR 26.13.03 when they were performing lead abatement services on structural steel;

q.  Whether Defendants TTI and Skyline violated COMAR 26.04.07.03B(4) by causing, suffering, allowing or permitting disposal of solid waste on Class Members property as if it were an open dump;

r.   Whether Class Member properties sustained lead paint and/or lead dust contamination as a result of Defendants' hydro-blasting of the TV Tower;

s.   Whether Defendants TTI and Skyline violated COMAR 26.04.07.03A by handling solid waste in a manner which will likely create a nuisance, impair the quality of the environment, and/or create other hazards to the public health, safety, or comfort;

t.   Whether Defendants violated COMAR 26.13.03.02 by failing to determine if the solid waste generated by the hydro-blasting of the TV Tower was hazardous waste.

73.   <u>Adequate Representation</u>:  The Plaintiffs will fairly and adequately protect the interests of the Class. The Plaintiffs have retained attorneys experienced in the prosecution of class actions and the Plaintiffs intend to prosecute this action vigorously. Furthermore:

a.   This action is properly maintained as a class action under Maryland Rule 2-231(b)(1)(A) in that separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants.

b.   This action also is properly maintained as a class action pursuant to Maryland Rule 2-231(b)(1)(B) in that separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not party to the adjudications, or would substantially impair or impede their ability to protect themselves.

c.   This action also is properly maintained as a class action under Maryland Rule 2-231(b)(2) in that Defendants have acted or refused to act, as hereinafter more

specifically alleged, on grounds which are generally applicable to the Class and have, by reason of such conduct, made appropriate final relief with respect to the entire Class as sought in this action.

d. This action also is properly maintained under Maryland Rule 2-231(b)(3) in that questions of law or fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy between the Class and Defendants.

74.     The commonality of issues of law and fact substantially diminishes the interest of members of the Class in individually controlling the prosecution of separate actions. Many of the members of the Class are unaware of their rights to prosecute a claim against Defendants. There has been little, if any, litigation already commenced by members of the Class to determine the questions presented herein. It is desirable that the claims be concentrated in this forum because many of the witnesses reside in the City of Baltimore and many of the Class who will be testifying in this case reside in Baltimore City. This class action can be managed without undue difficulty because Plaintiffs will rigorously pursue the interests of the Class by virtue of the specific damages incurred as a result of Defendants' conduct.

## COUNT I: NEGLIGENCE
### (TTI)

75.     Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding and subsequent paragraphs.

76.     As the owner of the TV Tower, TTI owed a duty to exercise that degree of care, skill and judgment ordinarily expected of owners of television broadcasting towers.

77.   That duty included the provision of adequate warnings to the Woodberry and surrounding communities prior to the hydro-blasting about the possibility of lead paint chips and dust that may fall on these communities during cleaning. Furthermore, TTI had a duty to inspect, supervise and oversee the work of its contractor to confirm that all applicable protocols were followed in the removal of lead paint from the surface of the TV Tower.

78.   That duty included keeping lead-based paint from escaping from the TV Tower and contaminating nearby communities, including communities occupied by Plaintiffs.

79.   Finally, that duty included that TTI would not engage in prohibited conduct in violation of applicable COMAR regulations; that TTI would not condone any activity which may generate lead-containing dust and debris without the use of plastic sheeting and vertical shrouds to contain debris within the work area; and that regulated cleanup procedures were followed at the end of each day and at the end of the project; that TTI would not dispose of solid waste by using these communities as an open dump and/or caused, suffered, allowed or permitted open dumping; that TTI would not hire an unaccredited lead abatement service provider; that TTI would not conduct uncontained and uncontrolled work, including Hydro-blasting of lead-contaminated paint from the TV Tower and caused an uncontrolled release of lead-based paint dust and particulate matter; that TTI would contain all wastes within the work site or a secure storage area; that TTI would not dispose of solid waste in the form of paint chips discarded into an open dump; that TTI would not engaged in solid waste handling in a manner that created a nuisance, impaired the quality of the environment, and created hazards to public health, safety, or comfort; that TTI would make a hazardous waste determination for solid waste in the form of discarded paint chips during the lead paint abatement of the TV Tower.

80.     Applicable Maryland regulations require, among other things, lead paint abatement workers and supervisors to be trained in lead paint abatement protocols. These same regulations require lead paint abatement supervisors to be accredited demonstrated by a certificate and identification card. Said regulations further require lead paint abatement supervisors to notify MDE in advance of beginning a lead paint abatement project in writing and informing the Department of the location and anticipated start and completion dates for the project. Defendant TTI performed the hydro-blasting of its lead paint-containing TV Tower in direct violation of these regulations.

81.     TTI breached the duties it owed to Plaintiffs in that it (1) failed to adequately warn the communities in the vicinity of the TV Tower that the hydro-blasting process would cause paint chips to fall all over those communities including homes, lawns, parks, roadways, walkways, playgrounds, churches and businesses; (2) failed to contain lead based paint and dust from escaping the TV Tower; and (3) engaged in prohibited conduct in violation of applicable Maryland regulations that included the performance of uncontained hydro-blasting on outside lead paint surfaces without the benefit of  plastic sheeting and vertical shrouds to contain debris within the work area; designated cleanup procedures and/or other best practices standards.

82.     TTI further breached its duties by disposing solid waste in an open dump and/or causing, suffering, allowing or permitting open dumping; hiring an unaccredited lead abatement service provider; conducting uncontained and uncontrolled work, including hydro-blasting of lead-contaminated paint from the TV Tower and causing an uncontrolled release of lead-based paint dust and particulate matter; failing to contain all wastes within the work site or a secure storage area; disposing of solid waste in the form of paint chips discarded into an open dump; engaging in solid waste handling in a manner that created a nuisance, impaired the quality of the environment,

and created hazards to public health, safety, or comfort; failing to make a hazardous waste determination of discarded paint chips during the lead paint abatement of the TV Tower.

83.     Defendant TTI knew or should have known that its breach of these duties would result in the contamination of Plaintiffs' properties and businesses. Defendant TTI had a non-delegable duty to implement regulated protocols designed to contain lead paint chips and lead dust from its TV Tower.

84.     It was foreseeable to Defendant TTI that, absent the application of existing protocols for containing lead-based paint from TV Towers, lead-based paint chips and lead dust would fall from the tower, contaminate real property within the vicinity of the tower and would significantly devalue the properties and businesses located in nearby communities by contaminating them.

85.     As a result of the careless acts and omissions of Defendant TTI, Plaintiffs' and Class Members' real property sustained lead paint and dust contamination that has resulted in significant reduction of their property values.  Now, Plaintiffs are required by law to disclose to potential buyers the fact that their homes and community sustained lead paint and dust contamination on multiple occasions.

86.     As a further result of the careless acts and omissions of TTI, Plaintiffs' and Class Members must remediate the lead paint and dust contamination of their respective properties, incurring significant expense.

87.     All the damages complained of were caused by the negligence of the Defendant TTI without any negligence by Plaintiffs contributing thereto.

WHEREFORE, Plaintiffs demand that this Court enter judgment in favor of Plaintiffs and against Defendant TTI, finding Defendant TTI liable to Plaintiffs and awarding Plaintiffs

compensatory damages in an amount in excess of $75,000.00, together with attorney's fees, costs and expenses of this lawsuit and such other relief as the Court may deem proper.

## COUNT II: NEGLIGENCE
### (Skyline)

88.     Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding and subsequent paragraphs.

89.     At all times relevant herein, Defendant Skyline was in the business of inspecting, hydro-blasting and painting outside structures, including television broadcast towers.

90.     Skyline owed a duty to exercise that degree of care, skill and judgment ordinarily expected of those in the business of inspecting, hydro-blasting and painting outside structures, including television broadcast towers.

91.     That duty included the provision of adequate warnings to the Woodberry community and surrounding communities prior to the hydro-blasting about the possibility of lead paint chips and dust that may fall on said communities during cleaning. Furthermore, Skyline had a duty to follow all applicable COMAR regulations and industry protocols concerning the remediation of lead paint from the surface of the TV Tower.

92.     That duty included keeping lead-based paint from escaping from the TV Tower and contaminating nearby communities, including communities occupied by Plaintiffs.

93.     Finally, that duty included that Skyline would not engage in prohibited conduct in violation of applicable COMAR regulations; that Skyline would not condone any activity which may generate lead-containing dust and debris without the use of plastic sheeting and vertical shrouds to contain debris within the work area; and that regulated cleanup procedures were followed at the end of each day and at the end of the project; that Skyline would not dispose of solid waste in an open dump and/or caused, suffered, allowed or permitted open dumping; that

Skyline would hire employees and supervisions trained in proper lead paint abatement; that Skyline would not conduct uncontained and uncontrolled work, including hydro-blasting of lead-contaminated paint from the TV Tower and cause an uncontrolled release of lead-based paint dust and particulate matter; that Skyline would contain all wastes within the work site or a secure storage area; that Skyline would not dispose of solid waste in the form of paint chips discarded into an open dump; that Skyline would not engaged in solid waste handling in a manner that created a nuisance, impaired the quality of the environment, and created hazards to public health, safety, or comfort; that Skyline would make a hazardous waste determination of discarded paint chips during the lead paint abatement of the TV Tower.

94.    Applicable Maryland regulations require, among other things, lead paint abatement workers and supervisors to be trained in lead paint abatement protocols. These same regulations require lead paint abatement supervisors to be accredited demonstrated by a certificate and identification card. Said regulations further require lead paint abatement supervisors to notify MDE in advance of beginning a lead paint abatement project in writing informing the MDE of the location and anticipated start and completion dates for the project. Defendant Skyline performed the hydro-blasting of its lead paint-containing TV Tower in direct violation of these regulations.

95.    Skyline breached the duties it owed to Plaintiffs in that it (1) failed to adequately warn the communities in the vicinity of the TV Tower that the hydro-blasting process would cause paint chips to fall all over those communities including homes, lawns, parks, roadways, walkways, playgrounds, churches and businesses; (2) failed to contain lead based paint and dust from escaping the TV Tower; and (3) engaged in prohibited conduct in violation of applicable Maryland regulations that included the performance of uncontained hydro-blasting on outside lead paint

surfaces without the benefit of plastic sheeting and vertical shrouds to contain debris within the work area, designated cleanup procedures and/or other best practices standards.

96.    Skyline further breached its duties by disposing solid waste on the properties of the Class Members as though the property was an open dump and/or causing, suffering, allowing or permitting open dumping; hiring employees and supervisors who were not qualified to perform lead paint abatement; conducting uncontained and uncontrolled work, including hydro-blasting of lead-contaminated paint from the TV Tower and causing an uncontrolled release of lead-based paint dust and particulate matter; failing to contain all wastes within the work site or a secure storage area; disposing of solid waste in the form of paint chips discarded into an open dump; engaging in solid waste handling in a manner that created a nuisance, impaired the quality of the environment, and created hazards to public health, safety, or comfort; failing to make a hazardous waste determination for solid waste in the form of discarded paint chips during the lead paint abatement of the TV Tower.

97.    Defendant Skyline knew or should have known that its breach of these duties would result in the contamination of Plaintiffs' properties and businesses. Defendant Skyline had a duty to implement regulated protocols designed to contain lead paint chips and lead dust from the TV Tower.

98.    It was foreseeable to Defendant Skyline that, unless if followed existing COMAR regulations and industry protocols for containing lead-based paint from TV Towers, lead-based paint chips and dust would fall from the tower, contaminating real property within the vicinity of the tower. This contamination would significantly devalue the properties located in nearby communities.

23

99.   As a result of the careless acts and omissions of Skyline, Plaintiffs' and Class Members' real property sustained lead paint and dust contamination that has resulted in the significant damages, depreciation of their property values as Plaintiffs are required by law to disclose to potential buyers the fact that their homes and community sustained lead paint and dust contamination on multiple occasions.

100.   As a further result of the careless acts and omissions of Skyline, Plaintiffs' and Class Members must remediate the lead paint and dust contamination of their respective properties, incurring significant expense.

101.   All the damages complained of were caused by the negligence of the Defendant Skyline without any negligence by Plaintiffs contributing thereto.

WHEREFORE, Plaintiffs demand that this Court enter judgment in favor of Plaintiffs and against Defendant Skyline, finding Defendant Skyline liable to Plaintiffs and awarding Plaintiffs compensatory damages in an amount in excess of $75,000.00, together with attorney's fees, costs and expenses of this lawsuit and such other relief as the Court may deem proper.

## COUNT III: Negligent Hiring, Retention and Supervision)
### (TTI)

102.   Plaintiff repeats and re-alleges each and every allegation contained in the preceding and subsequent paragraphs of this Complaint as if fully set forth herein.

103.   Defendant TTI had a duty to use reasonable care to select, supervise, and retain a company that was competent and fit to perform inspection and hydro-blasting functions at the TV Tower facility, including lead remediation activities.

104.   Defendant TTI breached their duty by failing to use reasonable care to select a company competent and fit to inspect and clean the TV Tower, in remediating lead paint, in failing

24

to properly supervise its contractor, failing to retain only competent and fit contractors to work on the TV Tower.

105.    Defendant TTI had actual and/or constructive knowledge that Skyline was unfit for its assigned duties in that the contractor lacked the appropriate accreditation, licensing and/or training to perform the work on the TV Tower called for in the contract between the Defendants.

106.    Further, TTI had actual and/or constructive knowledge that Skyline lacked the necessary permit to perform the work called for in the contract.

107.    Further, TTI had actual and/or constructive knowledge that Skyline failed to provide required notices to MDE prior to commencing work and/or take other required actions as required by the applicable COMAR regulations.

108.    TTI knew or should have known that Defendant Skyline's hydro-blasting of the TV Tower would cause property belonging to members of the public, including Plaintiffs and Class Members, to encounter byproducts of lead paint abatement activity.

109.    Plaintiffs are members of the public who would foreseeably come into contact with byproducts of Skyline's hydro-blasting. Therefore, TTI owed a duty of care to Plaintiffs, and such duty was breached.

110.    Defendant TTI's breach of duty in hiring, supervising, and retaining Defendant Skyline was the proximate cause of Plaintiffs' injuries.

111.    Plaintiffs did not contribute in any way to their injuries or damages described herein.

112.    As a result of the careless acts and omissions of TTI, Plaintiffs' and Class Members' homes and community sustained lead paint and dust contamination that has resulted in the significant depreciation of their homes' property values as Plaintiffs and Class Members are

required by law to disclose to potential buyers the fact that their homes and community sustained lead paint and dust contamination on multiple occasions.

113.    As a further result of the careless acts and omissions of TTI, Plaintiffs' and Class Members must remediate the lead paint and dust contamination of their respective properties, incurring significant expense.

WHEREFORE, Plaintiffs demand that this Court enter judgment in favor of Plaintiffs and against Defendant TTI, finding Defendant TTI liable to Plaintiffs and awarding Plaintiffs compensatory damages in an amount in excess of $75,000.00, together with attorney's fees, costs and expenses of this lawsuit and such other relief as the Court may deem proper.

## COUNT III: STRICT LIABILITY (ABNORMALLY DANGEROUS ACTIVITY)
### (TTI and Skyline)

114.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding and subsequent paragraphs.

115.    Defendants owned, operated, maintained and/or otherwise exercised control over the TV Tower at the time lead paint chips and lead dust were released throughout the Woodberry and neighboring communities as a result of the hydro-blasting performed by Skyline pursuant to a contract entered into with TTI.

116.    At all material times, Plaintiffs were in lawful possession of their land and businesses. Defendants' hydro-blasting of the TV Tower without utilizing proper protocols causing lead paint chips and lead dust to fall upon Plaintiffs' and Class Members' property resulted in an unreasonable, continuous, and increasing invasion of Plaintiffs' and Class Members' properties which has materially damaged and diminished the value of the properties and seriously interfered with their rights to use and enjoy their properties.

117.   Defendants owed a non-delegable duty to Plaintiffs and Class Members to ensure their properties and businesses would be free from lead paint chips and lead dust generated by hydro-blasting the TV Tower. Defendants possessed exclusive control over the hydro-blasting of TV Tower, and Defendants knew of the high probability of contamination of nearby properties stemming from the work.

118.   Defendants' breach of that duty and their interference with Plaintiffs' rights has been so unusual, pervasive, and excessive that it necessarily caused, and continues to cause, immediate and substantial damage and harm to Plaintiffs. The specific damages include, but are not limited to, Plaintiffs' inability to enjoy their property and community due to the high risk of childhood and/or adult lead poisoning and the costs to abate the lead paint chips and/or lead dust from their properties.

119.   Defendants' conduct regarding the hydro-blasting of the TV Tower is an abnormally dangerous activity and has resulted in an entry and intrusion, and the continued and increasing entry and intrusion onto and into Plaintiffs' properties of toxic and harmful lead-based paint.

120.   Defendants' conduct directly and proximately caused, and continues to cause, Plaintiffs' damages, including actual or increased harm to their property and economic interests and high risk of serious and permanent personal injuries, including death.

121.   Plaintiffs are entitled to recover damages for diminution of property value, loss of property appreciation, and lead paint chip and lead dust abatement of Plaintiffs' Class Members' properties and damages for all other losses and damages caused by Defendants.

122.    The above intentional and grossly negligent acts were wanton and reckless and were with complete disregard to the health and safety of Plaintiffs as well as protection of Plaintiffs' and Class Members' property .

123.    Plaintiffs and Class Members have sustained serious and significant property damage, diminution in the value of their properties that are permanent in nature without any negligence on the part of any Plaintiff or Class Member contributing thereto.

124.    As a further result of the careless acts and omissions of Defendants, Plaintiffs' and Class Members must remediate the lead paint and dust contamination of their respective properties, incurring significant expense.

125.    Defendants' actions exhibited actual malice, and/or conscious disregard and indifference to Plaintiffs and their properties.

WHEREFORE, Plaintiffs demand that this Court enter judgment in favor of Plaintiffs and against Defendants TTI and Skyline, finding Defendants TTI and Skyline jointly and severally liable to Plaintiffs and awarding each Plaintiff compensatory damages in an amount in excess of $75,000.00, together with attorney's fees, costs and expenses of this lawsuit; each Plaintiff punitive damages in an amount in excess of $75,000.00 and such other relief as the Court may deem proper.

### COUNT IV: Injunctive Relief
### (TTI and Skyline)

126.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding and subsequent paragraphs.

127.    Unless Defendants are compelled by this Court to remediate and clean up the lead contamination of Plaintiffs' properties, Plaintiffs will suffer immediate, substantial, and irreparable injury.

28

128.   The benefits to Plaintiffs in obtaining injunctive relief are equal to or outweigh the potential harm which Defendants would incur if this Court grants the requested injunctive relief.

129.   The public interest is best served by granting the injunction.

WHEREFORE, Plaintiffs demand that the Court issue an order granting Plaintiffs a permanent injunction, requiring Defendants TTI and Skyline to remediate and clean up the lead contamination of Plaintiffs' properties, plus interest and costs and such other relief as the Court may deem proper.

Respectfully submitted,

_____
William H. Murphy, Jr. (AIS# 6912010153)

_____
Ronald E. Richardson (AIS# 8712010517)

_____
Andrew K. O'Connell (AIS # 0106200194)
**MURPHY, FALCON & MURPHY**
1 South Street, 30th Floor
Baltimore, Maryland 21202
(410) 951-8744
andrew.oconnell@murphyfalcon.com
ronald.richardson@murphyfalcon.com

## JURY TRIAL DEMAND

The Plaintiffs hereby demand a jury trial on all issues raised in Plaintiffs' Complaint.

_____
Ronald E. Richardson (AIS# 8712010517)

29

IN THE CIRCUIT COURT FOR __Baltimore City__
(City or County)

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff*: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant*: You must file an Information Report as required by Rule 2-323(h).

*THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING*

FORM FILED BY: ☒PLAINTIFF ☐DEFENDANT    CASE NUMBER _____
(Clerk to insert)

CASE NAME: __Elizabeth L. Goldberg, et al.__    vs. __Television Tower, Inc., et al.__
          Plaintiff                                    Defendant

PARTY'S NAME: __Elizabeth L. Goldberg, et al.__    PHONE: _____

PARTY'S ADDRESS: __2035 Druid Park Drive, Baltimore, MD 21211__

PARTY'S E-MAIL: _____

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: __Andrew K. O'Connell__    PHONE: __410-951-8744__

PARTY'S ATTORNEY'S ADDRESS: __Murphy, Falcon & Murphy,1 South St.,30th Fl.,Balto., MD 21202__

PARTY'S ATTORNEY'S E-MAIL: __andrew.oconnell@murphyfalcon.com__

JURY DEMAND? ☒Yes ☐No

RELATED CASE PENDING? ☒Yes ☐No If yes, Case #(s), if known: __24-C-23002174__

ANTICIPATED LENGTH OF TRIAL?: _____ hours __90__ days

### PLEADING TYPE

New Case: ☒Original    ☐Administrative Appeal    ☐Appeal

Existing Case: ☐Post-Judgment    ☐Amendment

*If filing in an existing case, skip Case Category/ Subcategory section - go to Relief section.*

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint - DOB of Youngest Plt: _____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☒ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Workers' Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. - Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

**CC-DCM-002** (Rev. 04/2017)    Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

| | | | |
|---|---|---|---|
| ☐ Abatement | ☐ Earnings Withholding | ☐ Judgment-Interest | ☐ Return of Property |
| ☐ Administrative Action | ☐ Enrollment | ☐ Judgment-Summary | ☐ Sale of Property |
| ☐ Appointment of Receiver | ☐ Expungement | ☐ Liability | ☐ Specific Performance |
| ☐ Arbitration | ☐ Findings of Fact | ☐ Oral Examination | ☐ Writ-Error Coram Nobis |
| ☐ Asset Determination | ☐ Foreclosure | ☐ Order | ☐ Writ-Execution |
| ☐ Attachment b/f Judgment | ☒ Injunction | ☐ Ownership of Property | ☐ Writ-Garnish Property |
| ☐ Cease & Desist Order | ☐ Judgment-Affidavit | ☐ Partition of Property | ☐ Writ-Garnish Wages |
| ☐ Condemn Bldg | ☐ Judgment-Attorney Fees | ☐ Peace Order | ☐ Writ-Habeas Corpus |
| ☐ Contempt | ☐ Judgment-Confessed | ☐ Possession | ☐ Writ-Mandamus |
| ☐ Court Costs/Fees | ☐ Judgment-Consent | ☐ Production of Records | ☐ Writ-Possession |
| ☒ Damages-Compensatory | ☐ Judgment-Declaratory | ☐ Quarantine/Isolation Order | |
| ☒ Damages-Punitive | ☐ Judgment-Default | ☐ Reinstatement of Employment | |

*If you indicated **Liability** above,* mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded.  ☒ Liability is not conceded, but is not seriously in dispute. ☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000    ☐ $10,000 - $30,000    ☐ $30,000 - $100,000    ☒ Over $100,000

☐ Medical Bills $_____    ☐ Wage Loss $_____    ☐ Property Damages $_____

### ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation    ☒ Yes  ☐ No          C. Settlement Conference    ☒ Yes  ☐ No
B. Arbitration  ☐ Yes  ☒ No          D. Neutral Evaluation       ☐ Yes  ☒ No

### SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

### ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**. (Case will be tracked accordingly)*

☐ 1/2 day of trial or less          ☐ 3 days of trial time
☐ 1 day of trial time               ☐ More than 3 days of trial time
☐ 2 days of trial time

### BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited-** Trial within 7 months of          ☐ **Standard** - Trial within 18 months of
Defendant's response                               Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response

☐ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☒ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff_____. |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

May 9, 2023
_____
Date

Murphy, Falcon & Murphy, 1 South St.,30th Fl
_____
Address

Baltimore _____ MD _____ 21202
City        State   Zip Code

_____
Signature of Counsel / Party

Andrew K. O'Connell
_____
Printed Name