## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**ELIZABETH L. GOLDBERG,** *et al.***,**

**Plaintiffs,**

**v.**

**SKYLINE TOWER PAINTING INC.,** *et al.***,**

**Defendants.**

**Civil No. 1:23-cv-01708-JRR**

## MEMORANDUM OPINION

This matter comes before the court on Plaintiffs Elizabeth L. Goldberg, Myriam Ralston, Benjamin Roberts, Joshua C. Tohn, Maria Hagen, Christine Sajecki, John Ralston, Hannah Roher's Motion to Remand.  (ECF No. 13; the "Motion.")  The parties' submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2023).

## I.    BACKGROUND

Plaintiffs are residents of Baltimore, Maryland.  (ECF No. 5 ¶¶ 1-5.)  Defendant Television Tower, Inc. ("TTI"),  is a corporation organized under the laws of Maryland and does business in Baltimore, Maryland.  *Id.* ¶ 6.   Defendant Skyline Tower Painting, Inc. ("Skyline"), is a corporation organized under the laws of Colorado with its principal place of business in Scottsbluff, Nebraska. *Id.* ¶ 8.  At all times relevant, TTI owned the "candelabra" television tower located at 3723 Malden Avenue, Television Hill, Baltimore, Maryland. ("TV Tower.")  *Id.* ¶ 6.

The TV Tower was constructed in 1959.  During its construction, the TV Tower was coated with 2.5 tons of lead-based paint.  (ECF No. 5 ¶¶ 14, 16.)  Plaintiffs allege that, at all relevant times, TTI knew the TV Tower contained lead-based paint that would deteriorate over time; and that, despite the known hazards associated with lead-based paint, TV Tower's lead paint has never

been fully removed or contained despite the fact that it exhibited outward signs of deterioration (*i.e.,* the paint surface was chalky, chipping, peeling, and cracking). *Id.* ¶¶ 21-23.

TTI contracted with Skyline for evaluation and cleaning of the TV Tower using high pressure water ("hydro-blasting"). (ECF No. 5 ¶ 24.) At the time TTI and Skyline entered their contract, Skyline did not possess the appropriate accreditation, licensing, and/or training to perform the work. *Id.* ¶ 31. Plaintiffs allege that TTI and Skyline had a duty to ensure that the work done to the TV Tower complied with federal, state, and local regulations, including the Code of Maryland Regulations ("COMAR"). *Id.* ¶ 29.

Pursuant to the TTI and Skyline contract, Skyline began evaluating and hydro-blasting the TV tower on May 28, 2022. (ECF No. 5 ¶ 30.) Plaintiffs allege that Skyline's hydro-blasting of the TV Tower "dislodged lead-based paint chips and paint dust from TV Tower's surface hundreds of feet above the ground, allowing the toxic lead-based paint chips and dust to be carried by gravity, thermal dynamics and wind away from the TV Tower onto other real property, including real property belonging to Plaintiffs and Class Members and other members of the community." *Id.* ¶ 35. Plaintiffs further allege that Skyline's hydro-blasting "spread lead-based paint chips and lead-based dust for at least 4000 feet in every direction, coating Plaintiffs' and Class Members' property located within a 4000-foot radius of the TV Tower with toxic material hazardous to human health." *Id.* ¶ 36.

On May 10, 2023, Plaintiffs filed the underlying putative class action in the Circuit Court for Baltimore City against Defendants. (ECF No. 5.) The Complaint sets forth five counts: (Count I) Negligence against TTI; (Count II) Negligence against Skyline; (Count III) Negligent Hiring, Retention and Supervision against TTI; (Count IV) Strict Liability – Abnormally Dangerous

Activity against TTI and Skyline;[1] and (Count V) Injunctive Relief against TTI and Skyline.  The prayer for relief seeks: (i) as to Counts I through III – compensatory damages in an amount in excess of $75,000; (ii) as to Count IV – a finding that Defendants TTI and Skyline are jointly and severally liable, and awarding each Plaintiff compensatory damages and punitive damages in an amount in excess of $75,000; (iii) as to Count V – a permanent injunction "requiring Defendants TTI and Skyline to remediate and clean up the lead contamination of Plaintiffs' properties"; (iv) attorneys' fees and costs; and (v) any other relief this court deems proper.

On June 23, 2023, Defendants removed the action to this court pursuant to the Class Action Fairness Act ("CAFA").[2]  (ECF No. 17 at 2.)  On July 24, 2023, Plaintiffs filed the Motion arguing that the court should remand this action pursuant to CAFA's local controversy exception.  (ECF No. 13.)[3]

## II.   **LEGAL STANDARD**

Defendants may remove an action brought in state court to federal court provided the United States district courts have original jurisdiction over the action (*i.e.*, the action could have been initiated in the district court).  28 U.S.C. § 1441(a).  On a motion to remand, the removing party bears the burden of establishing federal jurisdiction.  *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 176 (4th Cir. 2017).  Removal jurisdiction raises "significant federalism concerns," *Mulcahey*, 29 F.3d at 151 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–109 (1941)); therefore, federal courts must "strictly construe the removal statute and resolve all doubts in favor of

---

[1] The strict liability claim is erroneously labeled in the Complaint as "Count III."
[2] As discussed below, the parties agree that Defendants properly removed this action pursuant to CAFA, 28 U.S.C. § 1332(d)(2).
[3] 28 U.S.C. § 1332(d)(4)(A).

remanding the case to state court." *Richardson v. Phillip Morris Inc.*, 950 F. Supp. 700, 702 (D. Md. 1997) (citations omitted).

In 2005, Congress enacted CAFA "to expand subject matter jurisdiction in the federal courts over interstate class actions of national importance."   *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 331 (4th Cir. 2019) (citation omitted).  "To ensure that interstate class actions of national importance are litigated in a perceived more neutral federal forum, CAFA extended federal jurisdiction to those class action proceedings that satisfy three requirements: (1) the putative class has more than 100 members (numerosity); (2) the amount in controversy exceeds five million dollars, exclusive of interest and costs (amount in controversy); and (3) the parties are minimally diverse in citizenship (minimal diversity)."  *Id.* at 330 (citing 28 U.S.C. § 1332(d)(2), (5)(B)).  "When the foregoing three criteria (*i.e.*, numerosity, amount in controversy, and minimal diversity) are satisfied, a defendant sued in a class action in a state court is presumptively entitled to remove the proceedings to federal court."  *Id.* (citing 28 U.S.C. § 1453 (b)).

CAFA "establishes certain exceptions to the exercise of [federal] jurisdiction under the statute, spelling out the circumstances under which the district court may or must decline to exercise jurisdiction."  *Bartels by & through Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 681 (4th Cir. 2018) (citing 28 U.S.C. §§ 1332(d)(3)-(5)).  "[W]hile the removing defendant bears the burden of showing that CAFA's general jurisdictional requirements are satisfied, the plaintiff has the burden of showing the applicability of one of the exceptions."  *Id.*  Relevant here, CAFA's local controversy exception provides:

> A district court shall decline to exercise jurisdiction under paragraph (2)--
>> (A)(i) over a class action in which--

4

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant--
    (aa) from whom significant relief is sought by members of the plaintiff class;
    (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
    (cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(4)(A).   "The plaintiff must establish the exception by a 'preponderance of the evidence.'"   *Russo v. Eastwood Constr. Partners, LLC*, No. 2:22-CV-1686-DCN, 2023 WL 2386453, at *3 (D.S.C. Mar. 7, 2023) (quoting *Russ v. Marriott Ownership Resorts, Inc.*, 4:20-cv-00187-SAL, 2020 WL 12771380, at *2 (D.S.C. Aug. 25, 2020)); *see Bryant v. Geico Cas. Co.*, No. CV 22-3310-PJM, 2023 WL 8437228, at *3 (D. Md. Dec. 5, 2023) (noting that "[t]he party seeking remand bears the burden of proving by a preponderance of the evidence that one of these exceptions applies").

## III.   ANALYSIS

### A.   Subject Matter Jurisdiction under CAFA

As set forth above, removal under CAFA is proper if the removing party can establish: (1) the putative class has more than 100 members (numerosity); (2) the amount in controversy exceeds

five million dollars, exclusive of interest and costs (amount in controversy); and (3) the parties are minimally diverse in citizenship (minimal diversity)." *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 330 (4th Cir. 2019) (citing 28 U.S.C. § 1332(d)(2), (5)(B)). The parties agree, and the court is satisfied, that Defendants properly removed this case pursuant to CAFA. Plaintiffs plead an amount in controversy in excess of $5,000,000.00. Plaintiffs seek compensatory damages in excess of $75,000 for Counts I through IV per Plaintiff and more than 300 putative class members. (ECF No. 5 ¶¶ 87, 101, 113, 125.) In Count IV, Plaintiffs also seek punitive damages in excess of $75,000 per Plaintiff and more than 300 putative class members. *Id.* ¶ 125. As to the second requirement, Plaintiffs allege that the putative class includes at least 300 real property owners in Maryland. *Id.* ¶¶ 69-70. As to the third requirement, there is diversity of citizenship between the named Plaintiffs and Skyline, because Skyline is a Colorado corporation doing business in Nebraska, and Plaintiffs are Baltimore City residents. *Id.* ¶¶ 1-5, 8. Accordingly, Defendants properly removed this case pursuant to CAFA, 28 U.S.C. § 1332(d)(2).

## B. **CAFA Exception**[4]

Because Defendants properly removed the action, the burden shifts to Plaintiffs to establish by a preponderance of evidence each element of a CAFA exception calling for remand to state court. *Priselac v. Chemours Co.*, 561 F. Supp. 3d 562, 570-71 (E.D.N.C. 2021); *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 388-89 (6th Cir. 2016)). "Any doubt about the applicability of [an] exception is resolved against the party seeking remand." *Priselac,* 561 F. Supp. 3d at 570-71 (quoting *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265 (8th Cir. 2015)).

"[A] 'court's analysis for jurisdictional purposes should focus on whether the case is a truly local controversy warranting remand or whether it is an interstate class action . . . involv[ing]

---

[4] Plaintiffs attach two exhibits to their Motion: Exhibit 1 – Spreadsheet of Affected Properties and Principal Residence Tax Status (ECF No. 13-2); and Exhibit 2 – Affidavit of Denise Greeley. (ECF No. 13-3). Plaintiffs also attach one exhibit to their Reply: Exhibit 1 – Affidavit of Denise Greeley. (ECF No. 19-1.)

In *Russo*, *supra,* the court acknowledged that "there is a circuit split as to whether the court may consider materials outside of the pleadings to determine whether [a CAFA] exception applies versus confining its determination to the pleadings alone." 2023 WL 2386453, at *9 (citing *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1016–17 (9th Cir. 2011) (restricting the court's remand consideration to the allegations in the pleadings); *Atwood v. Peterson*, 936 F.3d 835, 840–41 (8th Cir. 2019) (considering relevant affidavits in addition to the complaint); *Evans v. Walter Indus.*, Inc., 449 F.3d 1159, 1167–68 (11th Cir. 2006) (same)). The *Russo* court determined that it would consider the extrinsic evidence:

> Other courts within the Fourth Circuit did not constrain their analysis to the arguments existing at the time of removal. For instance, one court gave the parties additional time to file supplemental briefs on the local controversy exception and expressly considered the plaintiff's supplemental affidavit which further explained allegations in the amended complaint. *Craft v. S.C. State Plastering, LLC*, 2016 WL 11608327, at *1, 3 (D.S.C. Sept. 8, 2016). Similarly, another court gave both the plaintiffs and defendants an extension of time and opportunity to submit supplemental briefs regarding CAFA's minimal diversity and amount in controversy, as well as the application of CAFA's exceptions to jurisdiction after the motion to remand was filed. *Bowen v. Houser*, 2011 WL 380455, at *1 (D.S.C. 2011). However, most courts, including the Fourth Circuit, have been silent as to when and what they considered for evaluating exceptions to jurisdiction under CAFA. *See, e.g., Quicken Loans v. Alig*, 737 F.3d 960 (4th Cir. 2013); *Eakins v. Pella Corp.*, 455 F. Supp. 2d 450 (E.D.N.C. 2006); *Cook v. S.C. Pub. Serv. Auth.*, 2020 WL 869741 (D.S.C. Jan. 21, 2020); *Priselac v. Chemours Co.*, 561 F. Supp. 3d 562 (E.D.N.C. 2021); *Treon v. Dryvit Sys., Inc.*, 2009 WL 10677290 (D.S.C. Jan. 9, 2009); *Mungo v. Minn. Life Ins. Co.*, 2011 WL 2516934 (D.S.C. June 23, 2011); *Dernoshek v. FirstService Residential, Inc.*, 2021 WL 1060208 (M.D.N.C. Mar. 19, 2021).

2023 WL 2386453, at *9. The court will consider the attached exhibits for purposes of resolving the Motion.

more people, more money, and more interstate commerce that Congress intended to place in federal court.'" *Id.* (quoting *Quicken Loans Inc. v. Alig*, 737 F.3d 960, 965 (4th Cir. 2013)).[5]

In *Evans v. Walter Indus., Inc.*, the Eleventh Circuit explained:

> CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved "in favor of exercising jurisdiction over the case." S. REP. NO. 109–14 at 42, U.S. CODE CONG. & ADMIN. NEWS 3, 40. The Senate Report on CAFA further states that the local controversy exception:

> > is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole. Thus, the Committee wishes to stress that in assessing whether each of these criteria is satisfied by a particular case, a federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others.

> S. REP. 109–14, at 39, U.S. CODE CONG. & ADMIN. NEWS at 38. The language and structure of CAFA itself indicates that Congress contemplated broad federal court jurisdiction, *see e.g.*, Pub. L. No. 109–2, § 2(b)(2), 119 Stat. 4 ("providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction"), with only narrow exceptions. These notions are fully confirmed in the legislative history.

449 F.3d 1159, 1163-64 (11th Cir. 2006).

With this in mind, remand is appropriate under the local controversy exception if Plaintiffs establish by a preponderance of evidence that:

> (1) more than two-thirds of the members of the proposed plaintiff class are citizens of the state where the suit was filed originally; (2) at least one defendant (a) is a defendant from whom members of the plaintiff class are seeking "significant relief," (b) is a defendant

---

[5] "[R]eview of CAFA's legislative history reveals that the purpose of the local controversy exception is to permit class actions with a truly local focus to remain in state court." *Russo v. Eastwood Constr. Partners, LLC*, No. 2:22-CV-1686-DCN, 2023 WL 2386453, at *10 (D.S.C. Mar. 7, 2023) (citing S. REP. NO. 109–14, at 38 (2005)) (stating that a federal court should apply this exception to a case identified as "a truly local controversy—a controversy that uniquely affects a particular locality to the exclusion of all others")).

> whose conduct "forms a significant basis" for the proposed plaintiff class's claims, and (c) is a citizen of the state in which the action originally was filed; (3) the principal injuries stemming from the conduct alleged in the complaint occurred in the state where the action was filed originally; and (4) in the three years before the filing of the class action complaint, no other similar class action was filed against any of the defendants on behalf of the same or other class. 28 U.S.C. § 1332(d)(4)(A).

*Quicken Loans, Inc. v. Alig*, 737 F.3d 960, 964 (4th Cir. 2013); *Priselac*, 561 F. Supp. 3d at 571.

### 1.      *Citizenship of the Proposed Plaintiff Class*

To satisfy the first element, Plaintiffs must establish that "greater than two-thirds of the members . . . in the aggregate are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(I).  "A person is a citizen of a state only if she is a citizen of the United States and a domiciliary of that state . . . .  Whether a person is a domiciliary turns on the individual's intent. Not all those physically present within a state are residents." *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017) (citation omitted).  "When citizenship is questioned, a court must make an individualized inquiry relying on certain factors such as voter registration; current residence; the location of real and personal property; location of bank and brokerage accounts; membership in clubs, churches, or other associations; place of employment or business; driver's license and automobile registration; and the state to which a person pays taxes." *Id.*  "[M]any factors relevant to the domicile inquiry are publicly available, including business and professional licensures, property ownership, property taxes, and voter registration." *Id.* at 196.

"[A] plaintiff may establish entitlement to a remand under [the local controversy] exception[] if the proposed class definition limits itself to citizens of their home state." *Bryant v. Geico Cas. Co.*, No. CV 22-3310-PJM, 2023 WL 8437228, at *4 (D. Md. Dec. 5, 2023); *see Russo*, 2023 WL 2386453, at *11 (explaining that "[o]ne clear method to avoid the question of residency

versus citizenship is to limit the class to those affected citizens, not just residents of a geographic area"); *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 266 (8th Cir. 2015) (explaining that "[t]he Seventh Circuit notes two ways plaintiffs can meet their burden: (1) affidavit evidence or statistically significant surveys showing two-thirds of the class members are local citizens, or (2) redefine the class as only local citizens"). However, "[i]n cases where plaintiffs do not base citizenship on the class definition, they must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state." *Russo*, 2023 WL 2386453, at *11; *see Bryant*, 2023 WL 8437228, at *4 (explaining that because the proposed class is not limited to Maryland citizens, the plaintiffs "must present some other evidence of the citizenship of the proposed class members").

Here, as Skyline argues, Plaintiffs do not define their proposed class to consist only of Maryland residents. Rather, "Plaintiffs seek to represent Class Members defined as real property owners whose property is located within a 4000-foot radius of the TV Tower on or after May 28, 2022." (ECF No. 1 ¶ 69.) Therefore, Plaintiffs "must present some other evidence of the citizenship of the proposed class members." *Bryant*, 2023 WL 8437228, at *4.

In the instant case, Plaintiffs provide evidence that "of the 2,786 owners whose properties are situated within the 4000-foot radius of the TV Tower, 2,416 of them claimed those same Baltimore City properties or another Maryland property as their 'principal residence.'" (ECF No. 13-1 at 6.) Skyline argues that mere residency does not establish that proposed class members are Maryland citizens who are domiciled in the state. (ECF No. 17 at 5.) Further, Skyline contends that Plaintiffs' evidence is deficient for various reasons: (1) Plaintiffs fail to explain how Plaintiff's counsel's paralegal who gathered the data on which the Motion relies determined which Baltimore addresses were within 4,000 feet of the Candelabra; (2) Plaintiffs provide no evidence as to the

meaning of "principal residence;" (3) Plaintiffs' evidence does not establish that putative class members are citizens of Maryland who are domiciled in Maryland; and (4) Plaintiffs' analysis relating to government entities and companies is erroneous.[6]  *Id.* at 4-6.  In their Reply, relying on *Mason v. Lockwood, Andrews & Newman, P.C.*, citing 842 F.3d 383 (6th Cir. 2016), Plaintiffs contend that courts "have found that a class member's mere residency creates a rebuttable presumption of citizenship for the purposes of establishing the home-state and local controversy exception to CAFA jurisdiction."  (ECF No. 19 at 5-6.)

The court agrees with Plaintiffs.  In *Mason v. Lockwood*, the Sixth Circuit explained:

> Though the residency-domicile presumption did not prevail against the unrelenting headwinds of limited federal jurisdiction, there is no reason it should suffer a similar fate under the local controversy exception. As established at the outset of our analysis, the local controversy exception is not jurisdictional. *See also Clark*, 562 Fed. Appx. at 465 (holding that "the exceptions are not jurisdictional"); *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869 (9th Cir. 2013) (same); *Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 142 (2d Cir. 2013) (same); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (same); *Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011) (same). Thus, a party asserting the exception does not encounter a similar countervailing presumption that neutralizes residency's presumptive force in establishing domicile. In this context, it would function like a rebuttable presumption does in any other setting: shifting the burden to the opposing party to rebut the inference and permitting, but not requiring, the district court to find the ultimate fact. *See, e.g.*, 2 McCormick On Evid. § 342 (7th ed.).
>
> Indeed, the residency-domicile presumption fits particularly well in the CAFA exception context, where the moving party is tasked with demonstrating a fact-centered proposition about a mass of individuals, many of whom may be unknown at the time the complaint is filed and the case removed to federal court. *See* Nicole Ochi, *Are Consumer Class and Mass Actions Dead? Complex Litigation Strategies After CAFA & MMTJA*, 41 LOY. L.A. L. REV. 965, 1030 (2008) ("To achieve the objective of these [CAFA] exceptions, courts should grant plaintiffs a presumption of

---

[6] Relying on *Evans v. Walter Indus., Inc.*, 449 F.3d 1159 (11th Cir. 2006), Defendant TTI also argues that Plaintiffs fail to establish the first prong.  (ECF No. 18 at 5 n.2.))

citizenship when they define their classes according to state residency."); Stephen J. Shapiro, *Applying the Jurisdictional Provisions of the Class Action Fairness Act of 2005: In Search of a Sensible Judicial Approach*, 59 BAYLOR L. REV. 77, 135 (2007) (advocating the same). The citizenship inquiry under the local controversy exception should not be "exceptionally difficult," *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013), but instead "practical and reasonable." *Hollinger*, 654 F.3d at 572. Affording the moving party a rebuttable presumption of citizenship based on residency avoids the exceptional difficulty of proving the citizenship of a class of over 100 individuals, given the nature and timing of the citizenship inquiry under the local controversy exception. *See id.* at 573 (5th Cir. 2011) ("[W]here a proposed class is discrete in nature, a common sense presumption should be utilized in determining whether citizenship requirements have been met.").

Those circuits that have rejected the rebuttable presumption in the CAFA context have relied on case law addressing federal subject-matter jurisdiction. *See Reece*, 638 Fed. Appx. at 769 (citing *Whitelock v. Leatherman*, 460 F.2d 507, 514 (10th Cir. 1972) ("[A]llegations of mere 'residence' may not be equated with 'citizenship' for the purposes of establishing diversity.")); *In re Sprint Nextel Corp.*, 593 F.3d at 673 (citing *Meyerson v. Harrah's E. Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002) ("[R]esidence and citizenship are not synonyms and it is the latter that matters for purposes of the diversity jurisdiction.")); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007) (citing *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) ("For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient.")). However, these decisions extended the "mere averment of residency" principle without accounting for its underlying rationale. The sole basis for eschewing the residency-domicile presumption in *Robertson* was the countervailing, "inflexible" presumption against federal jurisdiction. *Swan*, 111 U.S. at 382, 4 S.Ct. 510; *see Robertson*, 97 U.S. at 649–50. Because the local controversy exception is not jurisdictional, the premise of *Robertson* and its jurisdictional progeny is missing here. Given this material distinction, the line of cases defendants rely on provides no basis for rejecting the residency-domicile presumption in this case.

One district court in our circuit has previously rejected the rebuttable presumption of citizenship for a different, albeit equally unpersuasive, reason. In *Lancaster v. Daymar Colleges Grp., LLC*, the district court declined to adopt the presumption as inconsistent

with the proposition that the movant bears the burden of proving citizenship. No. 3:11–CV–157–R, 2012 WL 884898, at *3 (W.D. Ky. Mar. 14, 2012). But this proves too much. Under this rationale, rebuttable presumptions would cease to exist, since the only circumstance in which they serve any purpose is when the beneficiary of the presumption also bears the burden of proof. 1 Jones on Evidence § 4:2 (7th ed.) ("The underlying purpose and impact of a presumption is to affect the burden of proving or disproving the presumed fact."). There is nothing inconsistent with placing the burden of proof on a particular party and also affording them a rebuttable presumption as one way of shouldering that burden. Indeed, our law is quite familiar with the concept. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (affording Title VII plaintiff a rebuttable presumption of unlawful discrimination if she establishes a prima facie case); *see also* 2 McCormick On Evid. § 343 (7th ed.) (listing other popular presumptions).

In a similar vein, defendants contend that our approach was rejected by the Seventh Circuit as "guesswork. Sensible guesswork, based on a sense of how the world works, but guesswork nonetheless." *In re Sprint Nextel Corp.*, 593 F.3d at 674. Again, this criticism can be made about presumptions generally. Presumptions are nothing more than common sense inferences "enlightened by human knowledge and experience." 31A C.J.S. Evidence § 204. They are, to use *Sprint's* phrase, the law's recognition of "how the world works." Defendants' argument constitutes a wholesale rejection of presumptions generally, a position we are disinclined to adopt in the absence of any reason to do so. Having distinguished the only line of authority that other cases have cited to reject the residency-domicile presumption, we see no reason to close our eyes to a centuries-old inference that a person's residence is presumptively his domicile.

842 F.3d 383, 392-94 (6th Cir. 2016).

As explained in *Bryant* (issued in December 2023), the Fourth Circuit has not yet "addressed the question of whether a combination of driver's licenses, residence addresses, and local requirements for vehicle registration and insurance suffice to establish domicile for purposes of the local controversy" exception; but – citing to its 2017 decision in *Scott v. Cricket Commc'ns, LLC* – the *Bryant* court noted that the Fourth Circuit "may be open to" the Sixth Circuit's reasoning

in *Mason*, which two district courts within the circuit have relied upon "to justify remands to state courts under the CAFA exceptions." *Bryant v. Geico Cas. Co.*, No. CV 22-3310-PJM, 2023 WL 8437228, at *5 (D. Md. Dec. 5, 2023) (citing *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196 n.6 (4th Cir. 2017), and referring to *Russo v. Eastwood Constr. Partners, LLC*, No. 2:22-CV-1686-DCN, 2023 WL 2386453 (D.S.C. Mar. 7, 2023), and *Cook v. S.C. Pub. Serv. Auth.*, No. 6:19-CV-03285-TLW, 2020 WL 869741 (D.S.C. Jan. 21, 2020), as district courts that have followed *Mason* as persuasive.).

In *Russo v. Eastwood Constr. Partners, LLC*, the district of South Carolina found that the plaintiffs met their burden with regard to the first prong where the plaintiffs "provided the court with property-tax records, delineating those class members who claimed the owner-occupied tax, with the resulting number of South Carolina citizens reaching eighty-eight percent."   2023 WL 2386453, at *12.  In so concluding, the *Russo* court noted that "[t]hough a court may not rely on 'sensible guesswork' in determining citizenship, the Tenth Circuit instead suggested that the CAFA exceptions should require an evidentiary standard based on 'practicality and reasonableness,' whereby the defendants must show that the plaintiffs' method to determine citizenship was unreasonable."  *Id.* (quoting *Lax v. App of N.M. ED, PLLC*, D.C. No. 1:20-CV-00264-SCY-JFR, 2022 WL 2711230, at *5 (10th Cir. July 13, 2022)).  Therefore, "[t]he party seeking to establish citizenship of the proposed class does not need to make a 'definitive determination of domicile' but 'must provide enough facts to allow a court to determine—not speculate—that it is more likely than not that the class action belongs in federal court.'"  *Id.* at *11 (quoting *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196-97 (4th Cir. 2017)).

In *Bryant*, the plaintiffs filed a putative class action in the Circuit Court for Montgomery County, Maryland, asserting breach of contract and seeking declaratory judgment.  *Id.* at *1.  The

defendants removed the case to federal court and the plaintiffs filed a motion to remand following jurisdictional discovery. *Id.* at *2. The dispute centered on whether the local controversy or home state exceptions to CAFA applied. *Id.*

In analyzing whether remand was appropriate, the court noted that the proposed class was not limited to Maryland citizens; rather it included those "'insured with Maryland policies.'" *Bryant*, 2023 WL 8437228, at *4. The defendants argued that the plaintiffs' evidence "merely shows proof of residency, not domiciliary intent." *Id.* at *5. Specifically, the defendants argued that the court should not "put undue weight on the numbers derived from their internal customer database because there is no guarantee that it is regularly maintained or accurate enough to establish the addresses, driver's licenses, and policy information of customers as of the date of removal." *Id.*

Relying on *Mason*,[7] *Russo*,[8] and *Cook*,[9] the *Bryant* court concluded that the plaintiffs presented sufficient evidence to show that the requisite two-thirds of the proposed class were domiciled in Maryland::

> The Court is not persuaded that *Russo* and *Cook* are distinguishable just because those cases concerned damages to immobile, real property (homes) and this case concerns transitory, personal property (vehicles). Just as the *Cook* court found it "utterly implausible to believe that more than two-thirds of the electrical customers of [the defendant] and the cooperatives are citizens of a state other than South Carolina," *id.* at 27-28, the Court finds it equally implausible to believe that more than two-thirds of the proposed class—defined as holding Maryland-based insurance policies—could be citizens of a state other than Maryland. Maryland's requirements for driver's licenses and vehicle registration further reinforce this conclusion. To deny remand here, as Defendants urge, simply because Plaintiffs have not provided individualized proof that each member of the proposed class possesses the requisite domiciliary intent to establish citizenship

---

[7] *Mason v. Lockwood, Andrews & Newman, P.C.*, 842 F.3d 383 (6th Cir. 2016).
[8] *Russo v. Eastwood Constr. Partners, LLC*, No. 2:22-cv-1686-DCN, 2023 WL 2386453 (D.S.C. Mar. 7, 2023).
[9] *Cook v. S.C. Pub. Serv. Auth.*, No. 6:19-cv-03285-TLW, 2020 WL 869741 (D.S.C. Jan. 21, 2020).

> would vitiate any practicality or reasonableness that is to be applied
> to the inquiry of citizenship under CAFA's exceptions. *See, e.g.,
> Mason*, 842 F.3d at 393-94. Further, although the Fourth Circuit has
> cautioned that a federal court's jurisdiction under CAFA should be
> construed "broadly," and its exceptions should be ready "narrowly,"
> *Dominion Energy*, 928 F.3d at 336, the reason for these rules of
> construction lies in CAFA's "objective of ensuring that interstate
> class action claims of national importance are heard and resolved in
> the federal courts." *Id.* at 338. This case does not appear to present
> "interstate class action claims of national importance." Rather,
> Plaintiffs' claims are derived from Maryland insurance law, and are
> asserted by a proposed class that appears to be predominantly
> composed of Maryland residents.

*Bryant*, 2023 WL 8437228, at *6.  Accordingly, remand was proper.  *Id.*

As stated above, Plaintiffs provide evidence that "of the 2,786 owners whose properties are situated within the 4000-foot radius of the TV Tower, 2,416 of them claimed those same Baltimore City properties or another Maryland property as their 'principal residence.'"  (ECF No. 13-1 at 6.) While Skyline takes issue with how Plaintiffs came to such a conclusion, Plaintiffs' offer the affidavit of Denise Greeley[10] to demonstrate specifically how they developed this evidence.  (ECF No. 19-1.)  To arrive at this conclusion, according to her affidavit, Greeley used a map radius calculator, which allowed her to identify the postal addresses within a 4,000-foot radius of the TV Tower.  (ECF No. 19-1 ¶¶ 2-3.)  Next, using the Maryland State Department of Assessments and Taxation's ("SDAT") Real Property Data Search tool, Greeley looked up the registered owners of the properties located within the 4,000-foot radius and whether those owners claim their respective properties as their "principal residence."  (ECF No. 13-3 ¶ 3.)  Principal residence, as defined by COMAR 18.07.03.01 (and on which SDAT relies and cites, according to Plaintiffs' Reply at ECF No. 19 at 3), refers to "the one dwelling where the homeowner regularly resides and is the location designated by the owner for the legal purposes of voting, obtaining a driver's license, and filing

---

[10] Greeley is a paralegal with 18 years of experience and works at Plaintiffs' counsel's firm, Murphy, Falcon & Murphy.  (ECF No. 19-1 ¶ 1.)

income tax returns."  (ECF No. 19 at 3; COMAR 18.07.03.01(B)(3); as stated, according to Plaintiffs, the SDAT website cites the COMAR definition of "principal residence.")  If the owner did not identify the property within the 4,000-foot radius as his or her "principal residence," and listed another property address as a mailing address, using the SDAT tool, Greeley then looked up whether the owner's mailing address is in Maryland and whether that mailing address is identified as the owner's principal residence.  (ECF No. 13-3 ¶ 4.)  Based on the evidence provided by Plaintiffs, 83.87% of the putative class members are citizens of Maryland.[11]  (ECF No. 19-1 ¶ 8.)

Plaintiffs' evidence demonstrates to the satisfaction of the court that it is more likely than not that two-thirds of the proposed class – all real property owners whose property is located within a 4,000-foot radius of the TV Tower on or after May 28, 2022 – are citizens of the state of Maryland.  *See Russo*, 2023 WL 2386453, at *11 (explaining that "[t]he party seeking to establish citizenship of the proposed class does not need to make a 'definitive determination of domicile' but 'must provide enough facts to allow a court to determine—not speculate—that it is more likely than not that the class action belongs in federal court'" (quoting *Scott v. Cricket Commc'ns*, 865 F.3d 189, 196-97 (4th Cir. 2017)); *see also Cook*, 2020 WL 869741, at *8 (finding it "utterly implausible to believe that more than two-thirds of the electrical customers of [the defendant] and the cooperatives are citizens of a state other than South Carolina"); *Bryant*, 2023 WL 8437228, at *6 (finding that it is "implausible to believe that more than two-thirds of the proposed class— defined as holding Maryland-based insurance policies—could be citizens of a state other than Maryland").  "[A]lthough the Fourth Circuit has cautioned that a federal court's jurisdiction under

---

[11] Skyline also takes issue with Plaintiffs' data on the basis that Greeley's search captured government-owned properties identified as a "principal office."  (ECF No. 17 at 6.)  In their Reply, Plaintiffs explain that these properties were excluded from their calculations.  (ECF No. 19-1 ¶ 8.)  But this is of no moment, as whether or not "principal office" properties are excluded from the data, Plaintiffs meet the first prong of the local controversy exception.  However, Greeley's exclusion of principal office properties enhances the general reliability of Plaintiffs' methodology.

CAFA should be construed 'broadly,' and its exceptions should be ready 'narrowly,' the reason for these rules of construction lies in CAFA's 'objective of ensuring that interstate class action claims of national importance are heard and resolved in the federal courts.'" *Bryant*, 2023 WL 8437228, at *6 (quoting *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 336 (4th Cir. 2019*)*).  Like *Bryant*, "[t]his case does not appear to present 'interstate class action claims of national importance.'" *Id.* (citation omitted).  Rather, Plaintiffs' claims are focused on an alleged incident involving, and conditions related to, the TV Tower located in Baltimore, Maryland, and whether Defendants violated COMAR and are otherwise liable for alleged harms resulting from the TV Tower incident/conditions.  (ECF No. 5 ¶¶  6, 72.) Accordingly, Plaintiffs meet the first prong of the local controversy exception.

### 2.   Local Defendant(s) form a Significant Basis

To satisfy the second prong, "Plaintiffs must show that at least one defendant (a) is a defendant from whom members of the plaintiff class are seeking 'significant relief,' (b) is a defendant whose conduct 'forms a significant basis' for the proposed plaintiff class's claims, and (c) is a citizen of the state in which the action originally was filed." *Russo v. Eastwood Constr. Partners, LLC*, No. 2:22-CV-1686-DCN, 2023 WL 2386453, at *13 (D.S.C. Mar. 7, 2023) (quoting 28 U.S.C. § 1332(d)(4)(A)).  It is undisputed that Defendant TTI is the local Defendant. (ECF No. 5 ¶ 6.)  Accordingly, Plaintiffs must show that they seek significant relief from TTI and that TTI's conduct forms a significant basis for Plaintiffs' claims.

The Fourth Circuit has not explicitly addressed the terms "significant relief" and "significant basis" as they relate to the local controversy exception. *Russo*, 2023 WL 2386453, at *13.  Instead, courts routinely look to Senate Report 109-14 of 2005, which provides in pertinent part:

> [T]he Committee intends that the local defendant must be a primary
> focus of the plaintiffs' claims–not just a peripheral defendant. The
> defendant must be a target from whom significant relief is sought by
> the class (as opposed to just a subset of the class membership), as
> well as being a defendant whose alleged conduct forms significant
> basis for the claims asserted by the class.

S. Rep. No. 109-14 at 40 (2005); *Russo*, 2023 WL 2386453, at *13.

TTI argues that "Plaintiffs have not made cognizable allegations that show to a reasonable certainty that TTI – as compared to out-of-state Defendant Skyline – is a defendant whose alleged conduct is the driving factor in the case and the source of most of the relief sought." (ECF No. 18 at 5.)  Relying on *Kaufman v. Allstate N.J. Ins. Co.*, TTI asserts that because Count II implicates only Skyline, TTI's alleged conduct does not form a significant basis for all the claims asserted in the Complaint. (ECF No. 18 at 11; citing *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144 (3d Cir. 2009)).  The court disagrees.

In *Kaufman*, nine plaintiffs filed a class action against insurance companies in the Superior Court of New Jersey.  561 F.3d at 150.  One of the defendant insurance companies (Allstate NJ) was a New Jersey citizen, but two (GEICO and Liberty) were not.  *Id.*  The plaintiffs pled three causes of action: (1) breach of contract; (2) breach of an implied duty of good faith and fair dealing; and (3) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8–1, *et seq.*  *Id.*  GEICO removed the action to federal district court pursuant to CAFA and the plaintiffs filed a motion to remand based on CAFA's local controversy exception.  *Kaufman*, 561 F.3d 144, 151 (3d Cir. 2009).  The district court remanded the action based on the local controversy exception, and the defendants appealed.  *Id.*

On appeal, the defendants argued that the plaintiffs failed to establish the second prong of the CAFA local controversy exception.  *Kaufman*, 561 F.3d at 152.  Specifically, the defendants argued that, pursuant to the "significant basis" provision, "every member of the proposed plaintiff

class must assert a claim against the local defendant." *Id.* at 154.  The Third Circuit carefully

explained its statutory language analysis:

> We agree with GEICO and Allstate NJ that "the claims asserted by
> the proposed plaintiff class" means the claims asserted by all the
> class members in the action. The term "class" plainly refers to all
> the members of the proposed plaintiff class. Additionally, the
> definite article preceding the term "claims" indicates that "the
> claims asserted" means all the claims asserted. *See Frazier*, 455 F.3d
> 542, 546 (5th Cir. 2006) (determining that, in 28 U.S.C. §
> 1332(d)(5)(A), the presence of the definite article in "the primary
> defendants" means the clause refers to all the primary defendants).
> Thus, we agree that the significant basis provision requires at least
> one local defendant whose alleged conduct forms a significant basis
> for all the claims asserted in the action.
>
> But this conclusion does not imply that the significant basis
> provision requires every member of the proposed plaintiff class to
> assert a claim against the local defendant—and the provision
> certainly does not state such a requirement. Instead, it requires that
> "at least 1 [local] defendant is a defendant . . . whose alleged
> conduct forms a significant basis for the claims asserted by the
> proposed plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)
> (emphasis added). The plain text of this provision relates the alleged
> conduct of the local defendant, on one hand, to all the claims
> asserted in the action, on the other. The provision does not require
> that the local defendant's alleged conduct form a basis of each claim
> asserted; it requires the alleged conduct to form a significant basis
> of all the claims asserted. While assessing the quantity of claims
> based on the local defendant's alleged conduct may be useful to the
> analysis, the significant basis provision does not establish an
> absolute quantitative requirement. Nor is it necessary to imply such
> a quantitative requirement to make sense of the provision, for a
> party's conduct may form a significant basis of an entire set of
> claims even if some claims within the set are not based on that
> conduct.
>
> In relating the local defendant's alleged conduct to all the claims
> asserted in the action, the significant basis provision effectively calls
> for comparing the local defendant's alleged conduct to the alleged
> conduct of all the Defendants. Indeed, all the claims asserted by the
> Plaintiffs reflect the alleged conduct of all the Defendants. If the
> local defendant's alleged conduct is a significant part of the alleged
> conduct of all the Defendants, then the significant basis provision is
> satisfied. Whether this condition is met requires a substantive

> analysis comparing the local defendant's alleged conduct to the alleged conduct of all the Defendants. We therefore reject the interpretation proposed by GEICO and Allstate NJ.

*Id.* at 155-56.  Importantly, the *Kaufman* court reasoned that "[t]he local defendant's alleged conduct must be an important ground for the asserted claims in view of the alleged conduct of all the Defendants." *Id.* at 157.

On remand to the district court, the Third Circuit provided several factors for the district court to consider:

> By way of example, the District Court could, on remand, inform its comparison of the local defendant's alleged conduct to the alleged conduct of all the Defendants by considering such possible areas of inquiry as: 1) the relative importance of each of the claims to the action; 2) the nature of the claims and issues raised against the local defendant; 3) the nature of the claims and issues raised against all the Defendants; 4) the number of claims that rely on the local defendant's alleged conduct; 5) the number of claims asserted; 6) the identity of the Defendants; 7) whether the Defendants are related; 8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and 9) the approximate number of members in the putative classes. Whether the District Court considers any or all of these factors, it must in every case still provide a reasoned analysis that focuses on the conduct of the Defendants—local and non-local—as alleged in the complaint.

*Id.* at 157 n.13.

"Courts have varied as to what percentage of claims affected by the local defendant(s) rises to a significant basis." *Russo*, 2023 WL 2386453, at *17 (citing *Benko*, 789 F.3d at 1119 (finding a significant basis when the local defendant impacted between fifteen to twenty percent of the plaintiffs in the class); *Allen v. Boeing Co.*, 821 F.3d 1111, 1116 n.3 (9th Cir. 2016) (finding a significant basis when plaintiffs alleged the local defendant was fifty percent responsible for the class claims); and *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 362 n.5 (5th

Cir. 2011) (finding no significant basis when the local defendant's conduct impacted only 6.9 percent of the plaintiff class)).

The court finds *Allen v. Boeing Co.,* 821 F.3d 1111 (9th Cir. 2016), persuasive. There, the plaintiff class of property owners sued Boeing Company, Boeing Commercial Airplanes, and Landau Associates, Inc., in state court alleging that Boeing released toxins into the groundwater around its Auburn, Washington facility, and that Landau (hired by Boeing to remediate) was negligent in its investigation and remediation of the resulting pollution. Specifically, the plaintiffs alleged that Boeing used materials it knew were environmentally hazardous and harmful, and that Boeing and Landau knew the material "posed a threat to the [class members'] health and rights . . . and that both defendants failed to take reasonable actions to investigate and remediate []." *Id.* at 1114. The plaintiffs asserted state law claims of negligence, nuisance, and trespass against Boeing, and negligence against Landau. *Id.* at 1115. After the defendants removed the action, the district court remanded it based on CAFA's local controversy exception, and the defendants appealed.

The issue on appeal was whether the plaintiffs "adequately pled both that they are seeking 'significant relief' from Landau and that Landau's alleged conduct forms a 'significant basis' for their claims." *Id.* at 1114. The Ninth Circuit found the plaintiffs had adequately sought relief from Landau to meet the local defendant/significant basis prong:

> It is true that Boeing's activities over several decades created the hazardous plumes. However, it does not follow that Boeing's liability (if any) for creating the pollutants necessarily dwarfs Plaintiffs' claims against Landau. The gist of Plaintiffs' claims is that the movement of the volatile organic chemicals off Boeing's property caused them harm, not that the existence of the chemicals at the Plant harmed them. Plaintiffs allege that Landau undertook in 2002 to investigate, remediate, and clean up the hazardous materials moving off Boeing's property and failed to take reasonable steps to do so. If Landau is shown to have failed, for more than a decade, to remediate the spreading toxic chemical plumes, its liability could be as great as Boeing's. Thus, the fact that Boeing created the pollution

does not in itself render insignificant the damages caused by Landau's alleged failure to investigate and remediate the spreading pollution.

Boeing's assertions that Plaintiffs have failed to plead their claims with sufficient specificity are similarly not persuasive. The local controversy exception does not require that plaintiffs specify the division of damages between defendants. In *Coleman*, the plaintiffs alleged that both the in-state defendant and the out-of-state defendant violated California law and sought damages equally from both of them. *Coleman*, 631 F.3d at 1013, 1020. This was sufficient to satisfy subsection (aa)'s requirement that plaintiffs seek "significant relief" from the in-state defendant. *Id.* at 1020. In *Benko*, we held that claims for general damages, punitive damages as a result of deceptive trade practices and fraud, and equitable relief were "sufficient to show that the Plaintiffs claim 'significant relief' from a local defendant." 789 F.3d at 1119.

Taking the allegations in the FAC at face value, as required by *Coleman*, Plaintiffs have sufficiently alleged that they have suffered, and continue to suffer, serious harm to their property and possibly to themselves from Landau's failure to remediate the pollution. Plaintiffs have not quantified their alleged damages, but they have specified the damages that they seek from each defendant. These damages appear to be the same whether caused by Boeing or Landau. Plaintiffs may not know, and perhaps cannot know at this time, how much of their damages is the result of Boeing's actions and how much is the result of Landau's actions or inactions. Nonetheless, the FAC sufficiently alleges that Plaintiffs are seeking significant relief against Landau, thus satisfying this component of the local controversy exception.

*Id.* at 1118-19.

As to whether the plaintiffs adequately alleged sufficient facts to satisfy the significant basis prong, the *Boeing* court explained:

. . . the gravamen of Plaintiffs' claims is not that Boeing used volatile organic chemicals, but that the chemicals have spread beyond Boeing's property. Plaintiffs assert separate claims against Boeing and Landau for their alleged failures to investigate, remediate and clean-up the chemical plumes. Should Plaintiffs prove their claims against Landau, its liability may be as great as Boeing's.

Boeing further asserts that Plaintiffs have not alleged that Landau's conduct forms a "significant basis" for their claims, as required by subsection (bb), because they have not distinguished Landau's acts from Boeing's acts. Boeing argues that Landau is at most an isolated player and that Plaintiffs have failed to establish that Landau's conduct was important relative to Boeing's.

In *Benko* we adopted a comparative approach for determining whether plaintiffs asserted that the conduct of an in-state defendant forms a "significant basis" for their claims. 789 F.3d at 1118 (holding that "[t]o determine if the "basis for the claims" against [the in-state defendant] is important or fairly large in amount or quantity, we compare the allegations against [the in-state defendant] to the allegations made against the other Defendants."). In *Benko*, the in-state defendant was one of six defendants and was responsible for only 15 to 20 percent of the activities of all defendants. 789 F.3d at 1118–19. Nonetheless, we concluded that the plaintiffs had "colorable claims" against the in-state defendant. *Id.* at 1119. Here, in contrast, Landau is one of only two defendants and all of the Plaintiffs have asserted claims against Landau. Following *Benko*, Plaintiffs have adequately alleged claims against Landau that are "important or fairly large in amount or quantity" relative to the claims against Boeing. *Id.* at 1118.

*Id.* at 1121.

In the instant case, Plaintiffs assert state law claims of negligence, negligent hiring, and strict liability against TTI, and a negligence claim against Skyline. The conduct underlying Plaintiffs' claims arises from the alleged "property devaluation caused by the negligent, reckless, deliberate, and intentional conduct committed within Baltimore City, Maryland by Defendants." (ECF No. 5 ¶ 67.) Plaintiffs allege that "Defendant Skyline acted as an agent for TTI when it was hydro-blasting the TV Tower" and that "Defendant TTI controlled the manner in which Skyline conducted its hydro-blasting work, including acts and omissions that lead to the contamination of Plaintiffs' and Class Members' property." *Id.* ¶ 66. The mere fact that Plaintiffs do not allege that TTI conducted the hydro-blasting does not render the significance of TTI's alleged conduct junior to that of Skyline insofar as the Complaint as a whole.

Relying on *Priselac v. Chemours Company*, TTI argues it is an "isolated role player." (ECF No. 18 at 10; citing 561 F. Supp. 3d 562, 576 (E.D.N.C. 2021)). In *Priselac*, the plaintiff brought a putative class action against out-of-state corporate defendants and in-state "managing" defendants for harms caused by the release of toxic chemicals from a North Carolina work site. Regarding the third prong of the CAFA local controversy exception, the plaintiff argued that "the managing defendants' conduct forms a 'significant basis' for the putative class's claims because the managing defendants oversaw the continued release of toxic chemicals from the Fayetteville Works Site." *Id.* at 575. Relying on *Kaufman*[12] and the Senate Report,[13] the *Priselac* court saw it differently:

> The managing defendants' conduct does not form a "significant basis" for all of the claims. The managing defendants did not engage in "conduct form[ing] a significant basis for all the claims asserted in the action." *Kaufman*, 561 F.3d at 155 (emphasis added). The complaint only names the managing defendants in five counts, but it names some iteration of the corporate defendants in all nine counts. *See* Compl. ¶¶ 196–266; *see also Carter*, 2012 WL 3637239, at *10 (holding based on *Kaufman* that the local controversy exception did not apply because the local defendant's conduct did not form a "significant basis" for all of the claims).

> More broadly, the managing defendants' conduct pales in comparison to that of the corporate defendants. The managing defendants operated the Fayetteville Works Site. Priselac alleges that the managing defendants knew they released toxic chemicals, knew the chemicals caused harm, and misrepresented the site's activities to state regulators. *See* Compl. ¶¶ 9–19, 48, 77–78, 84–88, 97–101, 138, 151, 162–70. However, the managing defendants acted within the scope of their employment with the corporate defendants. *See id.* ¶ 19. As employers, the corporate defendants oversaw and engaged in the same conduct. The corporate defendants allegedly possessed decades of knowledge and research concerning

---

[12] *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144 (3d Cir. 2009).

[13] The *Priselac* court relied on an example in the Senate Report: "For example, in a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit [the 'significant basis'] criteri[on] . . . . At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company." 561 F. Supp. 3d at 576 (quoting S. REP. NO. 109-14 at 40).

the harms of such chemicals, yet they still produced and discharged these chemicals in North Carolina and other locations. *See id.* ¶¶ 25–124, 131–70. By alleging civil conspiracy against the corporate defendants, Priselac suggests the corporate defendants played a larger role than the managing defendants. *See id.* ¶¶ 251–56. Here, the managing defendants are "isolated role player[s] in the alleged scheme implemented by" the corporate defendants. S. REP. NO. 109-14, at 40; *see also Casey v. Int'l Paper Co.*, No. 3:07cv421/RV/MD, 2008 WL 8854569, at *7 (N.D. Fla. Jan. 7, 2008) (unpublished) (holding that an environmental manager's conduct did not form a "significant basis" for claims concerning a mill that released particulate matter).

The *Kaufman* factors also demonstrate that the local defendants' conduct does not form a "significant basis" for the claims. *See Kaufman*, 561 F.3d at 157 n.13; *cf. Est. of Hanna*, 2015 WL 247906, at *5–6. Priselac raises claims for trespass to real property, private nuisance, negligence, negligent failure to warn, and battery against the managing defendants, but raises broader claims of civil conspiracy and unjust enrichment against the corporate defendants (factors two and three). *See* Compl. ¶¶ 196–266. Priselac alleges five claims against the managing defendants, but raises all nine claims against some combination of the corporate defendants (factors four and five). *See id.* Although the managing defendants are related to each other and to the corporate defendants, they are employed by the corporate defendants (factors six and seven). *See id.* ¶¶ 9–19. Thus, Priselac has failed to demonstrate that at least one forum-state defendant's alleged conduct forms a significant basis for the proposed class claims.

561 F. Supp. 3d at 576-77.

Contrary to TTI's position, *Priselac* suggests that Skyline could be considered the "isolated role player" because it conducted the work that it was contracted to do by TTI. As to TTI, Plaintiffs allege that TTI "knew that the TV Tower contained lead-based paint" that "would deteriorate over time" and knew "that Skyline was unfit" to do the work contracted for by TTI, but TTI contracted with Skyline anyway. (ECF No. 5 ¶¶ 22, 24, 32, 105.) The court appreciates that Plaintiffs' allegations also focus on the hydro-blasting, particularly in the negligence claim asserted against Skyline, but the core nucleus of Plaintiffs' claims is that the TV Tower's lead paint contaminated

and damaged their properties, and that Defendants breached their duties to Plaintiffs and otherwise failed to follow applicable protocols.  Although Plaintiffs elected to plead separate negligence claims against TTI and Skyline (Counts I and II, respectively), TTI's alleged conduct is an important and significant basis for all of Plaintiffs' claims; and, viewing the Complaint and story it tells holistically, absent TTI's alleged role in the entire fabric of Plaintiffs' Complaint, Skyline would not figure into the alleged harms from which Plaintiffs seek to recover.

The court is also satisfied that if Plaintiffs meet their burdens as to Counts I and II, TTI's liability could meet (or exceed) that of Skyline.  *See Allen v. Boeing Co.*, 821 F.3d 1111, 1121 (9th Cir. 2016)  (concluding that the plaintiffs satisfied the second prong where they "assert separate claims against Boeing and Landau for their alleged failures to investigate, remediate and clean-up the chemical plumes").  The court finds that Plaintiffs have met their burden to prove the second prong of the exception; TTI's conduct is a significant basis for Plaintiffs' claims and Plaintiffs seek significant relief from TTI.

### 3.    *Local Injuries*

It is undisputed that Plaintiffs allege that all of the harm occurred in Maryland and every property alleged to have been contaminated by lead paint and lead dust is located in Maryland. (ECF No. 5 ¶ 13.)

### 4.    *Similar Class Actions*

The last prong of the local controversy exception requires that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii).  The parties agree that no other class action has been filed against Defendants.  Accordingly, the fourth prong is met.

27

## V. <u>CONCLUSION</u>

The court finds that Plaintiffs have carried their burden of proof for application of CAFA's local controversy exception.  The court is therefore required to remand this action to state court. *Quicken Loans Inc. v. Alig*, 737 F.3d 960 (4th Cir. 2013).  The Motion to Remand (ECF No. 13) will be granted.  A separate order follows.

/S/

_____
Julie R. Rubin
United States District Judge

March 10, 2024